# IN THE SUPREME COURT OF IOWA

No. 08–1213

Filed January 9, 2009

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**SAMUEL Z. MARKS,**

Respondent.

Appeal from the report of the Grievance Commission.

The Grievance Commission of the Supreme Court of Iowa recommends suspension of respondent's license to practice law in this state. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Samuel Z. Marks, Des Moines, pro se.

**STREIT, Justice.**

In this disciplinary action, Samuel Z. Marks neglected two probate estates and failed to cooperate with the Iowa Supreme Court Attorney Disciplinary Board ("Board"). The Grievance Commission of the Supreme Court of Iowa ("Commission") found Marks violated the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct. The Commission recommended we suspend Marks' license to practice law for ninety days. Upon our consideration of the Commission's findings of fact, conclusions of law, and recommendation, we find Marks committed ethical violations and suspend his license to practice law for thirty days.

## I. Background Facts.

Marks was admitted to the Iowa bar in 2000. He is thirty-four years old and practices in Des Moines. Marks took over his father's practice in 2000. His practice focuses primarily on bankruptcy.

Marks has been previously disciplined for violating our ethics rules. In 2006, we temporarily suspended Marks' license for failure to respond to the inquiry of the Board regarding a complaint. Iowa Ct. R. 34.7(3). In 2007, the Board publically reprimanded Marks for incompetence, lack of diligence, and failure to cooperate timely and fully with the Board's investigation.

The present disciplinary action concerns a two-count complaint filed against Marks on January 15, 2008 by the Board. Marks did not file an answer until April 14, 2008. The Board alleged Marks neglected two probate matters and failed to cooperate with the Board's investigation. At the hearing before the Commission on July 7, 2008, Marks admitted to the violations and offered evidence to both explain and mitigate his conduct. He testified he was diagnosed with depression

approximately one year ago and currently takes an antidepressant. He also stated things were chaotic in his office because a couple of attorneys had left.

Considering all the relevant facts and circumstances, the Commission found Marks neglected the two probate matters and recommended Marks' license to practice law be suspended for ninety days with additional medical certification being required before reinstatement of his license. The Commission further recommended that Marks be restricted from practicing in the area of probate law until he can demonstrate proficiency in that area.

## II. Scope of Review.

We review the findings of the Grievance Commission de novo. Iowa Ct. R. 35.10(1). We give weight to the Commission's findings, but we are not bound by those findings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). The Board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 230 (Iowa 2006). This burden is " 'less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## III. Factual Findings.

**A. Neglect.** "Professional neglect involves 'indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes a client.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 821 (Iowa 2004) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 259–60 (Iowa 2004)).

"Neglect is more than ordinary negligence and usually involves multiple acts or omissions." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551–52 (Iowa 2004). In an estate matter, "failure to take the necessary actions . . . in a timely fashion constitutes professional neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 399 (Iowa 2005).

1. *Rumley estate.* William General Rumley died intestate in October 2002. His son Adrian Rumley, a Des Moines resident, was appointed administrator. The decedent had three other surviving children, two of whom resided in Texas and the other in the custody of the Iowa Department of Corrections. One of two pieces of real estate in the estate was sold in the spring of 2004. The record does not indicate any activity on the matter since that sale. Marks claims he could neither sell the other piece of real estate nor close the estate because he was unable to find Adrian Rumley, the administrator. Marks lost track of him when he left town. Marks claims he diligently tried to uncover Adrian Rumley's whereabouts. It was not until a few days before his disciplinary hearing that Marks met with the judge to discuss the possibility of appointing one of the decedent's other children as the administrator. Further, Marks admitted he did not keep any time records for the Rumley estate and did not have a tickler system in place until recently.

2. *Albach estate.* Robert E. Albach died January 22, 2002, leaving his entire estate to his wife Lucille and appointing her executor in his will. Lucille died in 2004, shortly after selling the property of the estate and relocating to Arizona. Marks claims he has closed the estate. However, he admitted he closed the estate only after receiving the complaint that was filed in this case. Additionally, he was unable to

provide any evidence indicating the estate had been closed. Explaining the delay in closing the estate, Marks stated he could not locate the contingent beneficiaries listed in the will after the death of Albach's wife Lucille, the executor and primary beneficiary. Further, Marks explained that the file on this matter was lost for a while. He also admitted he did not keep any time records for the Albach estate.

The evidence establishes Marks committed professional neglect on the Rumley estate and the Albach estate. Marks failed to close the estates in a timely fashion. His neglect delayed the administration of both estates, and it is possible that beneficiaries were prejudiced by Marks' neglect. "Such action constitutes not only a disservice to the client, but is also conduct prejudicial to the administration of justice and conduct that reflects adversely on the fitness to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008). Marks' conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law); and DR 6–101(A)(3) (a lawyer shall not neglect a client's legal matter).

**B. Failure to Cooperate with Disciplinary Process.** Marks did not file an answer to the Board's complaint within twenty days as required by Iowa Court Rule 34.6(4). It took Marks three months to answer the complaint and nearly four months to file answers to the interrogatories. His only defense was that he felt he could close the estates if he had more time. We expect and demand attorneys to cooperate with disciplinary investigations. *Honken*, 688 N.W.2d at 821. A failure to do so is an independent act of misconduct. *Comm. on Prof'l Ethics & Conduct v. Pracht*, 505 N.W.2d 196, 199 (Iowa 1993). Marks'

failure to respond to the Board's complaint in a timely fashion violates DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law).

The Commission recommended Marks' license be suspended with no possibility of reinstatement for ninety days and then only reinstated with additional medical certification and if Marks is able to demonstrate he is fit to practice law. Further, the Commission recommended Marks be restricted from practicing in the area of probate law until he can demonstrate proficiency in that area.

### IV. Misconduct and Sanction.

We agree with the Commission's findings and conclusion that Marks neglected two estate matters and failed to cooperate with the Board. We must now determine the appropriate sanction. We consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and our duty to uphold the integrity of the profession in the eyes of the public." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fleming*, 602 N.W.2d 340, 342 (Iowa 1999). We also consider both aggravating and mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 656 N.W.2d 93, 99 (Iowa 2002). Ultimately, the form and extent of a disciplinary sanction "must be tailored to the specific facts and circumstances of each individual case." *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981). "Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 104 (Iowa 2006).

In the present case, Marks neglected two probate matters and failed to cooperate with the Board's investigation. Our review of prior cases reveals the discipline imposed for neglect typically "ranges from a public reprimand to a six-month suspension." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 655–56 (Iowa 2001). In those cases warranting more serious discipline, additional violations or other aggravating circumstances were present, or the neglect resulted in more serious harm to clients. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams,* 749 N.W.2d 666 (Iowa 2008) (neglect resulting in prejudice to client, misrepresentation, and failure to respond warranted four-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Daggett,* 653 N.W.2d 377 (Iowa 2002) (neglect, misrepresentation to the court, and failing to respond to the complaint warranted sixty-day suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb,* 589 N.W.2d 746, 749 (Iowa 1999) (neglect of two client matters, failure to return clients' property, failure to deposit funds in trust account, and prior public reprimands warranted two-month suspension). In this case, there is no evidence that Marks' neglect resulted in harm to his clients or the beneficiaries of the estates.

Nonetheless, there are aggravating circumstances. Past disciplinary action bears upon an attorney's character and is considered an aggravating factor. *Comm. on Prof'l Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 680 (Iowa 1991). Marks had been publicly reprimanded in 2007, and his license was temporarily suspended for failure to cooperate with the Board in 2006. The fact the Board has publicly reprimanded and sanctioned Marks previously indicates his neglect is not isolated in nature. Further, multiple incidents of neglect are another aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis,* 749 N.W.2d

694, 703 (Iowa 2008). In this case, Marks neglected two separate legal matters.

On the other hand, Marks' depression is a mitigating factor. Personal illnesses, such as depression, do not excuse a lawyer's misconduct but can be mitigating factors and influence our approach to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Frerichs*, 718 N.W.2d 763, 768 (Iowa 2006). Marks is currently undergoing treatment for depression and believes it can be controlled with medication.

Considering all the relevant facts and circumstances, we decline to impose the Commission's recommended sanction of ninety days. We suspend Marks' license to practice law in Iowa for thirty days. We believe a thirty-day suspension would be more appropriate. Although it is unlikely we would suspend Marks' license for these instances of neglect alone, Marks' pattern of refusing to cooperate with the Board's investigations tips the scale in favor of a short suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 382 (Iowa 2005) ("We think the pervasiveness of the misconduct in the present case and the prejudicial impact it has on the bar and the criminal justice system call for a longer period of suspension than . . . ordered in most . . . cases.").

We also decline to follow the Commission's suggestion that Marks be restricted from practicing law in the area of probate. His problems were caused by neglect, not incompetence. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007) (where attorney's problems were caused by depression and neglect not incompetence, imposition of supervision would accomplish no useful purpose). However, we do agree that Marks should be required to present additional medical certification before his license is reinstated.

*See id.* at 820 (submitting medical certification as a prerequisite to automatic reinstatement where attorney's depression contributed to neglect). Within fifteen days of this suspension, Marks must provide the court with an evaluation from a licensed health care professional verifying his fitness to practice law. Subject to this condition and in the absence of an objection by the Board, Marks' license will be automatically reinstated as provided in Iowa Court Rule 35.12(2).

We also issue Marks a stern warning. He is teetering on the brink of disaster. Although he is fit to practice law, he has fallen into a pattern of neglect and non-cooperation these past few years. If he does not remedy this behavior, he will receive a harsher sanction next time he appears before us. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129 (Iowa 2004). Although we are sympathetic to the struggles Marks has endured with depression, his past conduct and record as a whole indicates he lacks diligence and professionalism.

## VI. Conclusion.

We suspend Marks' license to practice law in the State of Iowa for thirty days. Within fifteen days of this suspension, Marks must provide the court with an evaluation from a licensed health care professional verifying his fitness to practice law. Subject to this condition and in the absence of an objection by the Board, we shall reinstate Marks' license to practice law on the day after the thirty-day suspension period expires. *See* Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**